UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| 1. TIMOTHY TORIGIAN, | ) | Count One: Conspiracy to Commit Theft |
| 2. GERARD O'BRIEN, | ) | Concerning Programs Receiving Federal |
| 3. ROBERT TWITCHELL, | ) | Funds |
| 4. HENRY DOHERTY, | ) | (18 U.S.C. § 371) |
| 5. DIANA LOPEZ, | ) | |
| 6. JAMES CARNES, | ) | Count Two: Theft Concerning Programs |
| 7. MICHAEL MURPHY, | ) | Receiving Federal Funds; Aiding and |
| 8. RONALD NELSON, and | ) | Abetting |
| 9. KENDRA CONWAY | ) | (18 U.S.C. §§ 666(a)(1)(A) and 2) |
| | ) | |
| Defendants | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. |
| | ) | § 2461(c)) |

## INDICTMENT

At times relevant to this Indictment:

### General Allegations

### The Boston Police Department

1.     The Boston Police Department ("BPD") was the police department for the City of Boston and the oldest police department in the United States.   It was the largest police department in New England and approximately the 20th largest department in the country.

2.     The BPD had the authority to enforce the criminal laws of the Commonwealth of Massachusetts and the local rules and ordinances of the City of Boston.

1

## The BPD Received Federal Benefits

3.      For the calendar years 2016, 2017, and 2018, the BPD received annual benefits from the federal government in excess of $10,000.

4.      For example, the United States Department of Transportation ("DOT") is an agency of the United States that provides hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities to benefit the residents of the United States.   DOT provides funding to assist and enhance enforcement of traffic regulations on public roadways for the purpose of increasing public well-being and safety.

5.      For the calendar years 2016, 2017, and 2018, the BPD received annual benefits from the DOT in excess of $10,000.   DOT provided these funds through numerous federal grants.

6.      The United States Department of Justice ("DOJ") is an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities to benefit the residents of the United States.

7.      For the calendar years 2016, 2017, and 2018, BPD received annual benefits from the DOJ in excess of $10,000.   DOJ provided these funds through numerous federal grants.

## BPD Evidence Warehouse

8.      The BPD leases two buildings located at 1555 Hyde Park Avenue which serve as the BPD Evidence Warehouse (the "Warehouse").   The Warehouse was used, among other things, to store seized evidence.

9.      Officers of the Boston Police Evidence Control Unit ("ECU") were assigned to the Warehouse and were primarily responsible for, among other things, storing, cataloguing, and

retrieving the evidence at the Warehouse so it could be used in court proceedings and as otherwise needed by the BPD.

The Defendants

10.     Timothy Torigian was a Lieutenant in the BPD assigned to the ECU and was in command of the Warehouse.    Torigian supervised the officers of the ECU assigned to the warehouse.

11.     Torigian earned $246,405 in taxable income from the City of Boston in 2018; $205,956 in taxable income from the City of Boston in 2017; and $207,926 in taxable income from the City of Boston in 2016.

12.     Robert Twitchell and Gerard O'Brien were Sergeants in the BPD assigned to the ECU who also supervised the officers of the ECU under the direction of Lt. Torigian.

13.     Twitchell earned $191,722 in taxable income from the City of Boston in 2018; $144,665 in taxable income from the City of Boston in 2017; and $109,578 in taxable income from the City of Boston in 2016.

14.     O'Brien earned $177,500 in taxable income from the City of Boston in 2018; $152,674 in taxable income from the City of Boston in 2017; and $171,241 in taxable income from the City of Boston in 2016.

15.     Henry Doherty, Diana Lopez, James Carnes, Michael Murphy, Ronald Nelson, and Kendra Conway were police officers in the BPD assigned to the ECU.

16.     Doherty earned $133,604 in taxable income from the City of Boston in 2018; $111,812 in taxable income from the City of Boston in 2017; and $99,354 in taxable income from the City of Boston in 2016.

17.     Lopez earned $130,795 in taxable income from the City of Boston in 2018; $128,527 in taxable income from the City of Boston in 2017; and $122,306 in taxable income from the City of Boston in 2016.

18.     Carnes earned $125,453 in taxable income from the City of Boston in 2018; $114,973 in taxable income from the City of Boston in 2017; and $99,332 in taxable income from the City of Boston in 2016.

19.     Murphy earned $151,965 in taxable income from the City of Boston in 2018; $142,876 in taxable income from the City of Boston in 2017; and $120,549 in taxable income from the City of Boston in 2016.

20.     Nelson earned $46,037 in taxable income from the City of Boston in 2018; $137,596 in taxable income from the City of Boston in 2017; and $130,501 in taxable income from the City of Boston in 2016.

21.     Conway earned $119,600 in taxable income from the City of Boston in 2018; $132,968 in taxable income from the City of Boston in 2017; and $127,450 in taxable income from the City of Boston in 2016.

Overtime

22.     In addition to their salary for a regular 8-hour work shift, Monday through Friday from 7:30 a.m. to 4:00 p.m., officers of the ECU were able to earn overtime pay equivalent to 1.5 times their regular hourly pay rate, for various overtime assignments.

23.     In order to be paid for overtime, officers of the ECU were required to fill out an overtime slip.   The overtime slip contains entries for, among other things, the officer's name and identifying information, the type of overtime being performed, the location where the

4

overtime was being performed, the date of the overtime, and the hours of the overtime shift.    In addition, each overtime slip required the officers to specifically write the number of "**Actual Hours Worked**."    The entry for "actual hours worked" is both bolded and underlined on the overtime slip.    Officers had a duty to honestly fill out each overtime slip and were required to sign the form.

24.    In order for the officers of the ECU to be paid for overtime, the officer's supervisors were required to sign each overtime slip certifying that the overtime was authorized and that the officer actually worked the hours that the officer claimed to have worked.

### "Purge" and "Kiosk" Overtime

25.    Beginning by at least May 2016, officers of the ECU could earn overtime pay for a 4-8 p.m. overtime shift most commonly referred to as "purge" overtime.    The primary purpose of this overtime shift was to control and reduce the inventory of the Warehouse.    At various times, the 4-8 p.m. overtime shift also included efforts to scan and catalog the inventory of the Warehouse and dispose of seized narcotics.

26.    This 4-8 p.m. "purge" overtime shift frequently involved four or more officers of the ECU – at least one supervisor and often three or more officers – who all worked together inside the Warehouse.

27.    Beginning by at least May 2016 and continuing through February 2019, ECU officers could also perform what was referred to as "kiosk" overtime.    This overtime shift was available approximately once per month on a Saturday, from 6 a.m. to 2:30 p.m. "Kiosk" overtime involved two officers of the ECU travelling to each district within the city to collect materials, such as unused prescription drugs, from a "kiosk" located in each district.    These

materials would then be taken by the two officers of the ECU to an incinerator located in Saugus, and burned.

28.     Sometimes, though not always, after completing the trip to the incinerator, the individuals performing "kiosk" overtime would return to the Warehouse and "test" the alarm systems by arming and disarming the alarm, and deliberately tripping various Warehouse alarms to ensure proper functioning.

29.     The 4-8 p.m. "purge" overtime shift, and the 6 a.m. to 2:30 p.m. "kiosk" overtime shifts, were "hour for hour" overtime, which meant that the overtime was earned in fifteen minute increments.   To properly earn four hours of overtime for the 4-8 p.m. "purge" overtime shift, officers of the ECU were required to work a minimum of three hours and forty six minutes, and, to properly earn eight and one half hours of "kiosk" overtime, the officers of the ECU were required to work a minimum of eight hours and sixteen minutes.

The Warehouse Alarm

30.     The Warehouse was extensively alarmed.   The alarm system was maintained by the Boston Municipal Protective Services Department, which provided security for almost all buildings owned and controlled by the City of Boston (*i.e.*, Police Stations, Fire Stations, City Hall, Schools, Libraries, etc.).

31.     Once the Warehouse's perimeter alarm was set, no one could remain in the building without triggering the alarm.

32.     Data from the alarm system, including when it was set and disarmed on a given date, was maintained on servers by the Boston Municipal Protective Services Department.

33.     From at least May 2016 through February 2019, the alarm records frequently

showed that the building was closed, locked, and alarmed by 6 p.m. or before.

### Kiosk Overtime Incinerator Records

34.     The incinerator used by the ECU to dispose of the materials collected during "kiosk" overtime recorded the date and time of the arrival and departure of customers from the incinerator.

35.     The vehicles of customers using the incinerator were weighed at the time that the vehicles entered and exited the facility.

36.     The difference in weight between the time of entry and the time of departure allowed the company to create an invoice for the amount of material burned.

### Overview of the Conspiracy

37.     From at least May 2016 through in or about February 2019, the defendants and co-conspirators known and unknown to the Grand Jury routinely agreed to submit false and fraudulent overtime slips in which they claimed to have worked a full "purge" or "kiosk" overtime shift when in fact they did not.

38.     In 2016, for example, the defendants submitted false and fraudulent overtime slips claiming to have worked a full four hour "purge" shift on the following dates, despite the fact that the Warehouse perimeter alarm was set hours earlier:

| Date | Warehouse Perimeter Alarm Set | Defendants Submitting Overtime Slips Claiming to have Actually Worked 4 hours OT in the Warehouse from 4:00 p.m. to 8:00 p.m. |
|---|---|---|
| 5/3/16 | 5:49 p.m. | PO Lopez, PO Nelson |
| 5/4/16 | 5:42 p.m. | PO Nelson |
| 5/9/16 | 6:05 p.m. | PO Nelson |
| 5/11/16 | 5:43 p.m. | Lt. Torigian |
| 5/12/16 | 5:56 p.m. | Lt. Torigian |
| 8/17/16 | 6:35 p.m. | Lt. Torigian, PO Doherty, PO Lopez, PO Nelson |
| 8/24/16 | 6:36 p.m. | Lt. Torigian, PO Lopez, PO Nelson |
| 11/16/16 | 6:31 p.m. | Lt. Torigian, PO Doherty, and PO Lopez |
| 11/23/16 | 3:42 p.m. | Lt. Torigian |
| 12/21/16 | 6:03 p.m. | Lt. Torigian, PO Lopez and PO Nelson |
| 12/29/16 | 6:21 p.m. | Lt. Torigian, PO Murphy |

39.     In addition, in 2016, for example, the defendants submitted false and fraudulent overtime slips claiming to have worked a full eight and one half hour "kiosk" shift on the following dates:

| Date | Time Defendants Departed Incinerator | Defendants Set Perimeter Alarm and Left Warehouse | Defendants Claiming to Have Actually Worked 8.5 Hours of OT from 6 a.m. to 2:30 p.m. |
|---|---|---|---|
| 7/2/16 | 8:40 a.m. | 9:38 a.m. | Lt. Torigian |
| 9/3/16 | 9:00 a.m. | 9:57 a.m. | Lt. Torigian, PO Carnes |
| 12/3/16 | 8:47 a.m. | 9:44 a.m. | Lt. Torigian |

8

40.     In 2017, for example, the defendants submitted false and fraudulent overtime slips claiming to have worked a full four hour "purge" shift on the following dates, despite the fact that the Warehouse perimeter alarm was set hours earlier:

| Date | Warehouse Perimeter Alarm Set | Defendants Submitting Overtime Slips Claiming to have Worked in the Warehouse from 4-8 p.m. |
|---|---|---|
| 2/8/17 | 6:37 p.m. | Sgt. Twitchell, PO Carnes, PO Doherty, PO Lopez, PO Nelson |
| 2/15/17 | 6:36 p.m. | Lt. Torigian, Sgt O'Brien, PO Doherty, PO Lopez, PO Nelson |
| 2/21/17 | 6:04 p.m. | Sgt. Twitchell, PO Carnes, PO Doherty, PO Lopez, PO Nelson |
| 2/23/17 | 5:55 p.m. | Sgt. Twitchell, PO Doherty, PO Lopez, PO PO Nelson |
| 6/19/17 | 6:12 p.m. | Sgt. Twitchell, PO Lopez, PO Murphy, PO Nelson |
| 7/3/17 | 5:21 p.m. | Lt. Torigian, Sgt. O'Brien, PO Doherty, PO Lopez, PO Murphy, PO Nelson |
| 7/19/17 | 6:08 p.m. | Lt. Torigian, PO Nelson |
| 7/20/17 | 5:57 p.m. | Sgt. Twitchell, Sgt. O'Brien, PO Doherty, PO Nelson |
| 7/27/17 | 5:25 p.m. | Sgt. Twitchell, Sgt. O'Brien, PO Carnes, PO Doherty, PO Lopez, PO Nelson |
| 8/3/17 | 5:47 p.m. | Sgt. Twitchell, PO Carnes, PO Doherty, PO Murphy |
| 8/31/17 | 6:15 p.m. | Lt. Torigian, Sgt. O'Brien, Sgt. Twitchell, PO Carnes, PO Doherty |
| 9/7/17 | 6:10 p.m. | Lt. Torigian, Sgt. O'Brien, Sgt. Twitchell, PO Carnes, PO Doherty. PO Lopez, PO Nelson |
| 9/14/17 | 5:32 p.m. | Lt. Torigian, Sgt. Twitchell, PO Doherty |
| 10/3/17 | 6:15 p.m. | Lt. Torigian, Sgt O'Brien, Sgt. Twitchell, PO Doherty. PO Lopez, PO Nelson |
| 10/10/17 | 6:22 p.m. | Lt. Torigian, Sgt. O'Brien, Sgt. Twitchell, PO Carnes, PO Nelson |
| 11/22/17 | 5:10 p.m. | Lt. Torigian, Sgt. O'Brien, PO Carnes, PO Lopez, PO Murphy |
| 12/21/17 | 6:14 p.m. | Lt. Torigian, Sgt. O'Brien, Sgt. Twitchell, PO Conway, PO Doherty, PO Nelson |

41.     In addition, in 2017, for example, the defendants submitted false and fraudulent

9

overtime slips claiming to have worked a full eight and one half hour "kiosk" shift on the following dates:

| Date | Time Defendants Departed Incinerator | Defendants Set Perimeter Alarm and Left Warehouse | Defendants Claiming to Have Performed "Kiosk" Overtime from 6 a.m. to 2:30 p.m. |
|---|---|---|---|
| 3/4/17 | 8:43 a.m. | 9:36 a.m. | Sgt. Twitchell |
| 7/1/17 | 9:45 a.m. | 10:34 a.m. | Sgt. O'Brien, PO Murphy |
| 10/7/17 | 8:56 a.m. | None | Sgt. O'Brien |
| 11/4/17 | 10:15 a.m. | 11:27 a.m. | Lt. Torigian |

42.     In 2018, for example, the defendants submitted false and fraudulent overtime slips claiming to have worked a full four hour "purge" shift on the following dates, despite the fact that the Warehouse perimeter alarm was set hours earlier:

| Date | Warehouse Perimeter Alarm Set | Defendants Submitting Overtime Slips Claiming to have Worked in the Warehouse from 4-8 p.m. |
|---|---|---|
| 1/18/18 | 6:09 p.m. | Lt. Torigian, Sgt Twitchell, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 2/6/18 | 6:32 p.m. | Lt. Torigian, Sgt Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Doherty, PO Nelson |
| 3/21/18 | 6:10 p.m. | Lt. Torigian, Sgt Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Doherty, PO Lopez, PO Nelson |
| 4/11/18 | 6:07 p.m. | Lt. Torigian, Sgt Twitchell, PO Doherty, PO Lopez, PO Nelson |
| 5/17/18 | 5:57 p.m. | Lt. Torigian, PO Carnes, PO Conway, PO Doherty |

| 5/29/18 | 5:31 p.m. | Lt. Torigian, Sgt. Twitchell, PO O'Brien, PO Carnes, and PO Doherty |
| 5/31/18 | 6:04 p.m. | Sgt. O'Brien, PO Doherty, PO Lopez |
| 6/26/18 | 6:12 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Doherty and PO Conway |
| 7/19/18 | 5:51 p.m. | Lt. Torigian, Sgt. Twitchell, PO Carnes, PO Conway, PO Lopez, PO Murphy |
| 7/25/18 | 6:09 p.m. | Sgt. Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 8/2/18 | 6:01 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Lopez, PO Murphy, |
| 8/14/18 | 6:07 p.m. | Sgt. Twitchell, PO Carnes, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 8/15/18 | 5:46 p.m. | Sgt. Twitchell, Sgt. O'Brien, PO Conway, PO Doherty, PO Lopez |
| 8/23/18 | 6:06 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 8/30/18 | 5:57 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Conway, PO Doherty |
| 9/17/18 | 6:06 p.m. | Lt. Torigian, Sgt. Twitchell, PO Conway, PO Doherty |
| 10/1/18 | 5:59 p.m. | Lt. Torigian, PO Conway, PO Doherty, PO Lopez |
| 10/4/18 | 5:16 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Lopez, PO Murphy |
| 10/9/18 | 5:57 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Carnes, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 10/15/18 | 5:40 p.m. | Lt. Torigian, Sgt. Twitchell, Sgt. O'Brien, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 11/15/18 | 5:57 p.m. | Lt. Torigian, Sgt. O'Brien, PO Carnes, PO Conway, and PO Doherty |
| 12/20/18 | 5:59 p.m. | Lt. Torigian, Sgt. Twitchell, PO Conway, PO Doherty, PO Murphy |

43.     In addition, in 2018, for example, the defendants submitted false and fraudulent overtime slips claiming to have worked a full eight and one half hour "kiosk" shift on the following dates:

| Date | Time Defendants Departed Incinerator | Defendants Set Perimeter Alarm and Left Warehouse | Defendants Claiming to Have Performed "Kiosk" Overtime from 6 a.m. to 2:30 p.m. |
|---|---|---|---|
| 1/6/18 | 9:50 a.m. | 6:08 a.m. | Sgt. O'Brien, PO Murphy |
| 2/3/18 | 8:57 a.m. | 9:52 a.m. | Lt. Torigian, PO Doherty |
| 5/5/18 | 9:21 a.m. | None | Sgt. Twitchell, PO Murphy |
| 6/2/18 | 9:37 a.m. | 10:28 a.m. | Lt. Torigian, PO Murphy |
| 9/1/18 | 10:14 a.m. | 11:02 a.m. | Lt. Torigian |
| 10/6/18 | 8:21 a.m. | None | Sgt. O'Brien |

44.     In 2019, for example, the defendants submitted false and fraudulent overtime slips claiming to have worked a full four hour "purge" shift on the following dates, despite the fact that the Warehouse perimeter alarm was set hours earlier:

| Date | Warehouse Perimeter Alarm Set | Defendants Submitting Overtime Slips Claiming to have Worked in the Warehouse from 4-8 p.m. |
|---|---|---|
| 1/3/19 | 5:54 p.m. | PO Carnes, PO Conway, PO Doherty, PO Murphy |
| 1/7/19 | 6:08 p.m. | Lt. Torigian, PO Doherty, PO Murphy |
| 1/14/19 | 6:14 p.m. | Lt. Torigian, PO Carnes, PO Conway, PO Murphy |
| 1/16/19 | 5:45 p.m. | Lt. Torigian, PO Conway, PO Lopez |
| 1/24/19 | 6:12 p.m. | Lt. Torigian, Sgt. O'Brien, PO Carnes, PO Conway, PO Doherty, PO Lopez, PO Murphy |
| 1/28/19 | 6:00 p.m. | Lt. Torigian, Sgt. O'Brien, PO Carnes, PO Murphy |
| 1/29/19 | 6:09 p.m. | Lt. Torigian, Sgt. O'Brien, PO Carnes, PO Doherty, PO Murphy |
| 1/30/19 | 6:10 p.m. | Lt. Torigian, Sgt. O'Brien, PO Doherty, PO Lopez, PO Murphy |
| 2/7/19 | 6:15 p.m. | Lt. Torigian, Sgt. O'Brien, PO Conway, PO Doherty, and PO Murphy |

45.     From at least May 2016 through in or about February 2019, the defendants caused the BPD to pay in excess of $200,000 in overtime pay to the defendants for overtime hours that the defendants did not work, as set forth below.

46.     From at least May 2016 through in or about February 2019, Torigian received over $42,931 for overtime hours that he did not work.

47.     From at least May 2016 through in or about February 2019, Twitchell received over $25,644 for overtime hours that he did not work.

48.     From at least May 2016 through in or about February 2019, O'Brien received over $25,930 for overtime hours that he did not work.

49.     From at least May 2016 through in or about February 2019, Doherty received over $25,875 for overtime hours that he did not work.

50.     From at least May 2016 through in or about February 2019, Lopez received over $21,048 for overtime hours that she did not work.

51.     From at least May 2016 through in or about February 2019, Carnes received over $20,106 for overtime hours that he did not work.

52.     From at least May 2016 through in or about February 2019, Murphy received over $16,014 for overtime hours that he did not work.

53.     From at least May 2016 through in or about February 2019, Nelson received over $16,428 for overtime hours that he did not work.

54.     From at least May 2016 through in or about February 2019, Conway received over $16,479 for overtime hours that she did not work.

<u>Object and Purpose of the Conspiracy</u>

13

55.    The object of the conspiracy was for the defendants to embezzle funds from BPD, an agency that received federal funding.    The purpose of the conspiracy was for the defendants to enrich themselves personally by obtaining payment for overtime hours that they did not work.

Manner and Means of the Conspiracy

56.    Among the manner and means by which the defendants and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

        a.  From at least May 2016 through in or about February 2019, the defendants routinely left the Warehouse at least one or more hours before the end of the 4-8 p.m. overtime shift.

        b.  From at least May 2016 through in or about February 2019, the defendants routinely departed several hours prior to the end of the 6 a.m. to 2:30 p.m. "kiosk" overtime shift.

        c.  From at least May 2016 through in or about February 2019, despite leaving early, the defendants submitted false and fraudulent overtime slips claiming to have worked the full 4-8 p.m. or 6 a.m. to 2:30 p.m. overtime shift.

        d.  From at least May 2016 through in or about February 2019, defendants Torigian, O'Brien, and Twitchell knowingly endorsed the false and fraudulent overtime slips so that the they and their co-defendants would be paid for overtime hours that they did not work.

14

Overt Acts in Furtherance of the Conspiracy

57.     From at least May 2016 through in or about February 2019, the defendants and

co-conspirators known and unknown to the Grand Jury, committed and caused to be committed

the following overt acts, among others, in furtherance of the conspiracy:

## **Timothy Torigian**

|  | **On or About** | **Overt Act** |
|---|---|---|
| 1 | 5/11/16 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 2 | 9/3/16 | Endorsed a false and fraudulent overtime slip for 8.5 hours submitted by Carnes |
| 3 | 11/23/16 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 4 | 12/21/16 | Endorsed a false and fraudulent overtime slip for 4 hours submitted by Lopez |
| 5 | 7/3/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 6 | 11/22/17 | Endorsed a false and fraudulent overtime slip for 4 hours submitted by Lopez |
| 7 | 6/2/18 | Endorsed a false and fraudulent overtime slip for 8.5 hours submitted by Murphy |
| 8 | 10/4/18 | Endorsed a false and fraudulent overtime slip for 4 hours submitted by Twitchell |
| 9 | 1/16/19 | Submitted a false and fraudulent overtime slip claiming to have worked four hours |

## **Gerard O'Brien**

|  | **On or About** | **Overt Act** |
|---|---|---|
| 10 | 7/3/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 11 | 7/27/17 | Endorsed a false and fraudulent overtime slip for 4 hours submitted by Twitchell |
| 12 | 1/6/18 | Endorsed a false and fraudulent overtime slip for 8.5 hours submitted by Murphy |
| 13 | 10/6/18 | Submitted a false and fraudulent overtime slip claiming to have worked 8.5 hours |
| 14 | 11/15/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

### Robert Twitchell

|    | On or About | Overt Act |
|----|-------------|-----------|
| 15 | 2/23/17 | Endorsed a false and fraudulent overtime slip for 4 hours submitted by Doherty |
| 16 | 3/4/17 | Submitted a false and fraudulent overtime slip claiming to have worked 8.5 hours |
| 17 | 7/27/17 | Endorsed a false and fraudulent overtime slip for 4 hours submitted by O'Brien |
| 18 | 5/5/18 | Endorsed a false and fraudulent overtime slip for 8.5 hours submitted by Murphy |
| 19 | 10/4/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

### Henry Doherty

|    | On or About | Overt Act |
|----|-------------|-----------|
| 20 | 11/16/16 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 21 | 7/27/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 22 | 2/3/18 | Submitted a false and fraudulent overtime slip claiming to have worked 8.5 hours |
| 23 | 1/3/19 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

### Diana Lopez

|    | On or About | Overt Act |
|----|-------------|-----------|
| 24 | 5/3/16 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 25 | 11/22/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 26 | 10/4/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 27 | 1/16/19 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

## James Carnes

|    | On or About | Overt Act |
|----|-------------|-----------|
| 28 | 2/21/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 29 | 11/22/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 30 | 5/29/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 31 | 1/3/19 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

## Michael Murphy

|    | On or About | Overt Act |
|----|-------------|-----------|
| 32 | 12/29/16 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 33 | 7/1/17 | Submitted a false and fraudulent overtime slip claiming to have worked 8.5 hours |
| 34 | 5/5/18 | Submitted a false and fraudulent overtime slip claiming to have worked 8.5 hours |
| 35 | 1/3/19 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

## Ronald Nelson

|    | On or About | Overt Act |
|----|-------------|-----------|
| 36 | 5/3/16 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 37 | 2/23/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 38 | 7/27/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 39 | 4/11/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

## Kendra Conway

|    | On or About | Overt Act |
|----|-------------|-----------|
| 40 | 12/21/17 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 41 | 5/17/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 42 | 8/15/18 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |
| 43 | 1/16/19 | Submitted a false and fraudulent overtime slip claiming to have worked 4 hours |

COUNT ONE
Conspiracy to Commit Theft Concerning Programs Receiving Federal Funds
(18 U.S.C. § 371)

The Grand Jury charges:

58.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 57

of this Indictment.

59.     From at least May 2016 through in or about February 2019, in the District of

Massachusetts, the defendants,

> 1. TIMOTHY TORIGIAN,
> 2. GERARD O'BRIEN,
> 3. ROBERT TWITCHELL,
> 4. HENRY DOHERTY,
> 5. DIANA LOPEZ,
> 6. JAMES CARNES,
> 7. MICHAEL MURPHY,
> 8. RONALD NELSON, and
> 9. KENDRA CONWAY,

conspired with each other and with others known and unknown to the Grand Jury, to commit an

offense against the United States, to wit: theft concerning programs receiving federal funds, that

is, being agents of an organization, namely, the Boston Police Department, to embezzle, steal,

obtain by fraud and otherwise without authority knowingly convert to the use of a person other

than the rightful owner and intentionally misapply, property valued at $5,000 or more, that was

owned by, and was under the care, custody, and control of the Boston Police Department, which

received benefits in excess of $10,000 under a Federal program involving a grant, contract,

subsidy, loan guarantee, insurance or other form of Federal assistance in any one-year period, in

violation of Title 18 United States Code, Section 666(a)(1)(A).

All in violation of Title 18, United States Code, Section 371.

19

## COUNT TWO
Theft Concerning Programs Receiving Federal Funds; Aiding and Abetting
(18 U.S.C. § 666(a)(1)(A); 18 U.S.C. § 2)

The Grand Jury further charges:

60.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 57

of this Indictment.

61.     From at least May 2016 through in or about February 2019, in the District of

Massachusetts, the defendants,

> 1. TIMOTHY TORIGIAN,
> 2. GERARD O'BRIEN,
> 3. ROBERT TWITCHELL,
> 4. HENRY DOHERTY,
> 5. DIANA LOPEZ,
> 6. JAMES CARNES,
> 7. MICHAEL MURPHY,
> 8. RONALD NELSON, and
> 9. KENDRA CONWAY,

being agents of an organization, the Boston Police Department, embezzled, stole, obtained by fraud

and otherwise without authority knowingly converted to the use of a person other than the rightful

owner and intentionally misapplied, property valued at $5,000 or more, that was owned by, and

was under the care, custody, and control of the Boston Police Department, which received benefits

in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee,

insurance or other form of Federal assistance in any one-year period.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Sections 371 and 666, set forth in Counts One and Two, the defendants,

> 1. TIMOTHY TORIGIAN,
> 2. GERARD O'BRIEN,
> 3. ROBERT TWITCHELL,
> 4. HENRY DOHERTY,
> 5. DIANA LOPEZ,
> 6. JAMES CARNES,
> 7. MICHAEL MURPHY,
> 8. RONALD NELSON, and
> 9. KENDRA CONWAY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c), any property, real or personal, which

constitutes, or is derived from, proceeds traceable to the offenses.

2.      If any of the property described in paragraph 1, above, as being forfeitable

pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 ,United States Code,

Section 2461(c), as a result of any act or omission of the defendants --

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred to, sold to, or deposited with a third party;

    c.      has been placed beyond the jurisdiction of this Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided
            without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other

property of the defendants up to the value of the property described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Mark Grady
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS; August ____20____ 2020.

Returned into the District Court by the Grand Jurors and filed.

Dawn M. King   8/20/20 5:05pm
_____

DEPUTY CLERK

22